UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HANSEN,<br><br>        Plaintiff,<br><br>  vs.<br><br>P. NKWOCHA,<br><br>        Defendant. | 1:15-cv-01665-DAD-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS,<br>RECOMMENDING THAT DEFENDANT<br>NKWOCHA'S MOTION FOR SUMMARY<br>JUDGMENT BE GRANTED<br><br>(ECF No. 16.)<br><br>OBJECTIONS DUE WITHIN FOURTEEN<br>(14) DAYS |

## I.     BACKGROUND

Steven Hansen ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on November 2, 2015.  (ECF No. 1.)  This case now proceeds with Plaintiff's First Amended Complaint filed on February 29, 2016, against sole defendant Custody Officer Philip Nkwocha ("Defendant"), on Plaintiff's retaliation claim under the First Amendment.  (ECF No. 7.)

On September 22, 2016, Defendant filed a motion for summary judgment on the grounds that: (1) Plaintiff fails to state a claim for retaliation; (2) Plaintiff failed to exhaust administrative remedies prior to filing suit; and (3) Defendant is entitled to qualified immunity. (ECF No. 16.) On December 30, 2016, Plaintiff filed an opposition.[1] (ECF No. 19.) The motion has been submitted upon the record without oral argument pursuant to Local Rule 230(*l*), and for the reasons that follow, the court recommends that Defendant's motion be granted on the ground that Plaintiff failed to exhaust administrative remedies.

## II. SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff is currently incarcerated at the California Correctional Institution (CCI) in Tehachapi, California, under the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events giving rise to this action allegedly occurred.

Plaintiff alleges the following. Plaintiff is a white "MAC REP"[2]. (ECF No. 7 at 3.) While Plaintiff was conducting state authorized tournaments in his housing unit, Defendant observed him speaking to a Black prisoner. Plaintiff was called to the office where Defendant began yelling at him, saying that he had no business talking to a Black inmate because Plaintiff was white. Defendant ordered Plaintiff to return to his cell or he would "tear up [his] cell," while threateningly holding his can of pepper spray. (ECF No. 7 at 3.)

Plaintiff contends that Defendant's partner, Correctional Officer Nelson, attempted to reason with Defendant. It failed however, and Nelson told Plaintiff to "give him a wake-up call . . . I give up trying to talk to him." (ECF No. 7 at 4.)

When Plaintiff filed his appeal, Defendant refused to process it. Then, when Defendant became aware of the appeal, he tried to intimidate Plaintiff into dropping the appeal by telling Plaintiff that the appeal "will never go anywhere because he's a correctional officer," that no one will believe Plaintiff because he's an inmate, and that it will only cause Plaintiff problems.

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 16-5.)

[2] Men's Advisory Council representative.

(ECF No. 7 at 4.)  Defendant also told Plaintiff that he would see to it that Plaintiff was removed from MAC status, "which has happened."  (ECF No. 7 at 4.)

## III.    RETALIATION CLAIM – FIRST AMENDMENT VIOLATION

On May 17, 2016, the court found that Plaintiff stated a cognizable claim for retaliation against defendant Nkwocha in the First Amended Complaint, but failed to state any other claims.  (ECF No. 8.)

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim.  Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.

## IV.    SUMMARY JUDGMENT BASED ON EXHAUSTION

### A.    Legal Standards

#### 1.    Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

**2.    California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System**

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a).

At the time of the events giving rise to the present action, California prisoners were required to submit appeals within thirty calendar days of the event being appealed, and the process was initiated by submission of the appeal at the first level. Id. at §§ 3084.7(a),

3084.8(c). Three levels of appeal are involved, including the first level, second level, and third level.[3] Id. at § 3084.7. The third level of review exhausts administrative remedies. Id. at § 3084.7(d)(3). In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a)(4).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.

### 3.  Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc). Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56. Id. If the court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e). Jones, 549 U.S. at 223–24; Lira v. Herrrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[3] The third level is sometimes known as the Director's level.

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

R. Civ. P. 56(a); <u>Albino II</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The court may consider other materials in the record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).  In judging the evidence at the summary judgment stage, the court "must draw all reasonable inferences in the light most favorable to the nonmoving party."  <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  The court must liberally construe Plaintiff's filings because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  <u>Albino II</u>, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  <u>Id.</u>  The ultimate burden of proof remains with defendants, however.  <u>Id.</u>  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  <u>Id.</u> at 1166.

**B.**   **Defendant's Facts**

Defendant filed a proposed statement of uncontroverted facts on September 22, 2016, as follows.  (ECF No. 16-2.)

Plaintiff is a California State prison inmate. At all relevant times alleged in the Complaint, Plaintiff was housed at the California Correctional Institution ("CCI") in Tehachapi, California.

On November 2, 2015, Plaintiff filed a Complaint brought under 42 U.S.C. § 1983 alleging that Defendant Nkwocha prohibited Plaintiff from speaking with an inmate of another race and threatened him, in violation of the First Amendment right to freedom of association and retaliation, during an incident that occurred on October 9, 2015. In his Complaint, Plaintiff alleged that on October 9, 2015, Defendant Nkwocha observed Plaintiff speaking with an African-American inmate, ordered Plaintiff to stop speaking with the inmate, and threatened to "tear up" Plaintiff's cell if he did not comply in violation of his First Amendment rights. Plaintiff also alleged that Defendant Nkwocha's actions were retaliatory, based on complaints made by Plaintiff to the correctional officer's supervisors.

On February 29, 2016, Plaintiff filed a First Amended Complaint ("FAC") wherein he re-alleged the same claims against Defendant Nkwocha arising from the same incident, only he changes the date of the occurrence to September 12, 2015. [5] Plaintiff also included a retaliation claim based on his inmate appeal of the incident, alleging that once Defendant Nkwocha became aware of the appeal he attempted to intimidate Plaintiff into dropping it and told Plaintiff he would be removed from the Men's Advisory Council ("MAC"), which eventually occurred.

The freedom of association claim and retaliation claim based on the threatened use of pepper-spray contained in Plaintiff's Complaint and operative FAC are identical. In the FAC, Plaintiff added a retaliation claim arising after the submission of his inmate appeal.

CDCR has a comprehensive administrative appeals system for prisoners' complaints, described in the California Code of Regulations (Cal. Code Regs.), title 15, § 3084, et seq. Cal. Code Regs., title 15, § 3084.1(a) provides that any inmate may appeal any departmental

---

[5] Defendant asserts that "[i]n the Complaint, Plaintiff alleged the same incident occurred on October 9, 2015[, and that Defendant uses] the September 12, 2015 date alleged in the operative FAC, but the use of either date does not change the exhaustion analysis." (ECF No. 16-2 at 3 fn.2.)

decision, action, condition, or policy which they can demonstrate as having a material effect upon their welfare.  Under the California Code of Regulations, an inmate has 30 calendar days to submit an appeal from the occurrence of the event or decision being appealed, or upon first knowledge of the action or decision being appealed.  To exhaust the administrative appeal process, the inmate must complete his appeal through the Third Level of review.

Plaintiff previously filed inmate grievances through CDCR's administrative appeals system while incarcerated at CCI.  On October 17, 2015, Plaintiff submitted a grievance, Appeal Log No. CCI-15-02108,[6] alleging that that on September 12, 2015, Officer P. Nkwocha was rude, unprofessional and racist when he asked Plaintiff to "lock up" because he was talking to a Black inmate and threatened to "tear up" Plaintiff's cell if he did not comply.

On December 1, 2015, Plaintiff's grievance in Appeal Log No. CCI-15-02108 was partially granted at the Second Level of review and returned to Plaintiff.  The appeal was partially granted in that an inquiry was conducted into Plaintiff's allegations and it was determined that staff did not violate policy.

On February 18, 2016, Plaintiff's Appeal Log No. 15-02108, regarding the allegation that Defendant Nkwocha was rude, unprofessional, and racist, in violation of his First Amendment rights, was denied at the Third Level of review and returned to Plaintiff. Plaintiff's Appeal Log No. 15-02108 does not include the retaliation claim arising after the submission of Plaintiff's inmate appeal.  Plaintiff's FAC describes that Defendant Nkwocha attempted to intimidate Plaintiff and threatened to have Plaintiff removed from the Men's Advisory Council as a result of the inmate grievance.

Plaintiff did not exhaust the administrative appeal process for his retaliation claim against Defendant Nkwocha prior to bringing suit in this action.  In his verified Complaint, Plaintiff describes that, when Defendant Nkwocha prohibited him from speaking with the African-American inmate, he "decided to finally stand up to Nkwocha's racist/discriminatory pattern of abusive misconduct, and filed a series of Staff Complaint administrative appeals . . .

---

[6] Appeal log numbers CCI-0-15-02108, CCI-15-02108, and 15-02108 are used interchangeably throughout this order to identify the same appeal.

///

The administrative appeal was handled as a Staff Complaint, and exhausted by CDCR at the Director/TLR level of handling."

Plaintiff's grievance alleging that Defendant Nkwocha was rude, unprofessional, and racist, was still pending when he filed the Complaint on November 2, 2015. Plaintiff's Complaint alleged, with regard to the exhaustion of administrative remedies, that Plaintiff's appeal, 15-02108, had been submitted and was being processed as a "staff complaint classification." Plaintiff filed suit before he had exhausted his available administrative remedies. California Correctional Institution has no record of receiving any other appeal related to the allegations in the FAC. The Office of Appeals has no record of ever receiving an appeal from Plaintiff regarding his claim of retaliation arising after the September 12, 2015 incident against any prison official. Plaintiff therefore did not exhaust the administrative remedies prior to filing the present lawsuit.

## C. **Defendant's Motion**

Defendant argues that Plaintiff failed to exhaust his administrative remedies for the retaliation claim against Defendant Nkwocha upon which this case now proceeds. Defendant's evidence includes the declarations of J. Wood (Appeals Coordinator at CCI) and M. Voong (Chief of CDCR's Office of Appeals), allegations in Plaintiff's original Complaint and First Amended Complaint, and various court records in this case. (ECF Nos. 1, 7, 16-3, 16-4.)

In J. Wood's declaration, Wood states as follows:

> "A thorough search of our records, which are kept in the ordinary course of business at or near the time this Office receives an inmate appeal, revealed:
>
> > On December 1, 2015, Plaintiff's 602 appeal log no. CCI-15-02108, a staff complaint, was partially granted at the second level of review and returned to Plaintiff. That appeal addressed Plaintiff's allegations that on September 12, 2015, Officer P. Nkwocha asked Plaintiff to "lock up" because he was talking to a black inmate and threatened to "tear up" Plaintiff's cell if he did not comply. The appeal was partially granted in that an inquiry was conducted into Plaintiff's allegations and it was determined that staff did not violate policy. This appeal was later submitted to the third level for review.

///

9

///

A thorough search by my staff of appeals submitted by Plaintiff which were screened out and involved the allegations listed in paragraph 8(a)-(b)[7] revealed:

On October 7, 2015, Plaintiff's 602 appeal log no. CCI-15-02108, the staff complaint referenced in paragraph 9(a) above, was screened out and returned to Plaintiff because the appeal was submitted as a group appeal. Plaintiff was advised that if he intended to file a staff complaint, he would have to submit the appeal as an individual, as staff complaints cannot be processed as a group appeal. On October 14, 2015, the same appeal was screened out again and returned to Plaintiff because the appeal was vague. Plaintiff was advised to provide specific facts as to who is involved and what action(s) they took and resubmit. Plaintiff resubmitted the appeal, which was accepted and processed at the Second Level."

(Wood Decl., ECF No. 16-4 at 4, ¶¶9, 10.) Copies of the two notifications to Plaintiff that his appeal was screened out are attached to Wood's declaration. (Id., Exh. A.)

Attached to Voong's declaration is a copy of Plaintiff's 602 appeal log no. CCI-15-02108, a staff complaint, which was denied at the third level of review on February 18, 2016. (Voong Decl., ECF No. 16-3, Exh. A.) Voong declares that this appeal addressed Plaintiff's allegations that on September 12, 2015, Officer P. Nkwocha was rude, unprofessional and racist when he asked Plaintiff to "lock up" because he was talking to a Black inmate, and threatened to "tear up" Plaintiff's cell if he did not comply. (Id. at 5, ¶12(a)). Voong also declares that a thorough search of records at the Office of Appeals revealed that the Office did

---

[7] Paragraph 8(a)-(b) of J. Wood's declaration, ECF No. 16-4, states:

"The California Attorney General's Office requested that this Office research its records to ascertain whether inmate Steven Hansen, CDCR No. AK6368 (Plaintiff), filed any inmate appeals while incarcerated at CCI alleging that:

(a) Plaintiff, a white inmate, alleges his right to associate with Black inmates was violated. Plaintiff claims that when he was conducting a State-authorized tournament in his housing unit, Defendant Nkwocha observed Plaintiff speaking with a Black inmate, ordered Plaintiff to return to his cell, and threatened to "tear up his cell" while holding a can of pepper spray. Plaintiff alleges that Defendant Nkwocha yelled at him, stating that Plaintiff had no business talking to a Black inmate because Plaintiff is White.

(b) Plaintiff alleges that Defendant Nkwocha attempted to intimidate Plaintiff into dropping his inmate appeal, and told Plaintiff that he would be removed from the Men's Advisory Council ("MAC") status."

10

not screen out any appeals submitted by Plaintiff and relevant to Plaintiff's right to association or retaliation claims against Defendant. (Id. at 5, ¶13.) Also attached to Voong's declaration is a copy of the "Inmate/Parolee Appeals Tracking System – Level III, Appellant Appeal History," listing Plaintiff's appeals accepted and screened-out at Level III between August 24, 2012 and December 14, 2015. (Id., Exh. B.)

Based on Defendant's arguments and evidence in support of his motion for summary judgment, the court finds that Defendant has met his burden to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy before filing this lawsuit. Therefore, the burden now shifts to Plaintiff to come forward with evidence showing that he did exhaust his administrative remedies, or that there is something in his particular case that made the existing and generally available remedies effectively unavailable to him.

### D. **Plaintiff's Opposition**

Plaintiff concedes that he did not exhaust his remedies using the appeals process at CCI. Plaintiff contends that in the past at CCI, 602 appeals were shredded or just thrown away, never to be addressed, and when he did not receive any reply to his appeal, he moved forward and filed this case.

Plaintiff asserts that because of issues with denial of due process and retaliation at CCI, he has sent other appeals to Internal Affairs and the Office of the Ombudsman to involve another agency and force the institution to act on his complaint. Plaintiff also asserts that in the past, CCI had a very high volume of staff misconduct and he claims that another inmate also filed a lawsuit against defendant Nkwocha, because Nkwocha entered the inmate's cell and assaulted the inmate.

Plaintiff has attached a one-page typewritten page to his opposition, titled "Notice of Liability for Retaliatory Action against Prisoners Bringing Lawsuits of or the Filing of, or Threatening to File Administrative Grievances Against Prison Staff and/or Officials." (Opp'n, ECF No. 19 at 4.) The Notice is not dated or signed. It appears to be directed to prison staff and officials and advises against "the threat of retaliation, or retaliation, or the threat to place,

///

or the placement of, an inmate in Ad/Seg for filing, or threatening to file, a complaint against prison staff or officials." (Id. at 4, ¶6.)

### E.    Discussion

Plaintiff has not submitted any admissible evidence in support of his opposition. His statements in the opposition are not signed under penalty of perjury and his exhibit (Notice) is not authenticated or a self-authenticating document under Federal Rules of Evidence 901 or 902.[8]  However, Plaintiff's original Complaint and First Amended Complaint are verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

In Plaintiff's original Complaint, filed on November 2, 2015, Plaintiff alleges that (1) there is a grievance procedure at CCI; (2) he used the procedure to file a prison grievance addressing the facts in the Complaint; and (3) he completed the process through the third and final level. (ECF No. 1 at 1-2, ¶ I.) Plaintiff identifies the grievance he filed as "#CCI-0-15-02108 (Staff Complaint classification)." (Id. at 1, ¶I(D)). Plaintiff also alleges that "[t]he administrative appeal was handled as a Staff Complaint, and exhausted by CDCR at the Director/TLR level of handling." (Id. at 8:9-10.)    In Plaintiff's First Amended Complaint, filed on February 29, 2016, Plaintiff alleges that (1) there is an inmate appeal or administrative remedy process available at CCI; (2) he filed an appeal or grievance concerning ALL of the facts contained in the complaint; and (3) the process was completed. (ECF No. 7 at 2, ¶II.) Plaintiff attests that the appeal was denied at the first level, that "C/O Nkwocha was less that truthful" at the second level, and that the appeal was never returned to him from the third level

---

[8] "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the matter in question is what its proponent claims it is." Fed. R. Evid. 901(a). A proper foundation can be established through an affidavit made on personal knowledge that meets the requirements of Federal Rule of Civil Procedure 56(c). See Orr v. Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002); Fed. R. Civ. P. 56(c). Alternatively, documentary evidence can be authenticated under Federal Rule of Evidence 901(b)(1) by a witness who wrote it, signed it, or saw others do so; or as a self-authenticating document under Federal Rule of Evidence 902. See id. at 774; accord SEC v. Phan, 500 F.3d 895, 913 (9th Cir. 2007); Fed. R. Evid. 901(b); Fed. R. Evid. 902.

of appeals.  (Id.)  Plaintiff claims that Nkwocha refused to process the appeal at the first level.  (Id. at 4.)  Plaintiff also claims that when Nkwocha became aware that the appeal had been fled, he attempted to intimidate Plaintiff into dropping the appeal by telling him that his appeal will never go anywhere because Nkwocha is a correctional officer and Plaintiff is an inmate, so no one will ever believe Plaintiff and all Plaintiff is going to do is cause himself problems.  (Id.)

Plaintiff filed this lawsuit on November 2, 2015.  (ECF No. 1.)  This case now proceeds with the First Amended Complaint filed on February 29, 2016, against sole Defendant Nkwocha on Plaintiff's First Amendment claim for retaliation.  The retaliation claim is based on Plaintiff's allegations that defendant Nkwocha threatened to remove Plaintiff from MAC status because Plaintiff had filed an appeal against him.  (ECF No. 8 at 4:17-21.)   Thus, the issue here is whether Plaintiff exhausted all of the remedies available to him for this retaliation claim before filing this lawsuit on November 2, 2015.[9]

The only appeal at issue is Plaintiff's appeal log no. CCI-0-15-02108 filed on October 17, 2015.  (ECF No. 16-3, Exh. A.)  Plaintiff identified this appeal as the one that he completed to the third level of review, exhausting his remedies.  (ECF No. 1 at 1, ¶D.)  Defendant's evidence shows that this is the only appeal Plaintiff filed between September 12, 2015, and November 2, 2015, addressing Plaintiff's allegations in the complaint.  (Wood Decl., ECF No. 16-4 at 4, 9-11, Exh.B; Voong Decl., ECF No. 16-3 at 5, ¶¶12-14, Exh.B.)  Plaintiff has not disputed this fact.

Plaintiff submitted appeal log no. CCI-15-02108 on October 17, 2015 at the first level of review.  (Voong Decl., Exh. A, ECF No. 16-3 at 9.)  Plaintiff brought the appeal as a staff complaint.  (Id.)  Plaintiff stated as follows:

> This staff complaint cannot be any more direct than it is.  C/O Nkwocha told me (the white MAC Rep) to lock it up because I was talking to a black inmate (Inmate Radford D-2-137 P-09891) then went on to threaten to tear up my cell if I did not comply.  My complaint is that C/O Nwocha is rude, unprofessional, obnoxious, and worst of all racist.  I was conducting an in house Tournament and had to interact with people of all races.  When I attempted to explain why I

---

[9] Plaintiff's retaliation claim based on defendant Nkwocha harassing Plaintiff because he was speaking to a Black inmate was dismissed in both of the court's screening orders filed on February 10, 2016, and May 17, 2016.  (ECF Nos. 6, 8.)  This claim is no longer at issue.

was talking to all races C/O Nkwocha ordered me to lock up or he was going to tear up my cell. This all occurred during night Dayroom on 9-12-2015 on the

"A" side of unit 2 at about 8:10pm. The above information should provide the "who, what, when where and how" requested on the CDC form 695. If it wasn't for C/O Nkwocha's continuous unprofessional, racist, and obnoxiousness, I would have let this go after the first time it was rejected, however this has to be addressed.

(Id. at 9, 11.)

The first level of review was bypassed, and the appeal was granted in part at the second level on December 2, 2015, to the extent that an appeal inquiry would be conducted. (Id. at 10, 13-14.) On December 8, 2015, Plaintiff submitted the appeal to the third level of review, stating as follows:

Please exhaust granting this, partially is unacceptable, when I was interviewed on 11-25-2015, I clearly stated while I was in the dayroom conducting Map Rep business C/O Nkwocha told me to lock it up because I'm the white MAC Rep and had no business talking to a Black inmate. I never said I was standing by Bradford [sic] door, to say otherwise is less than truthful. Inmate Bradford[10] and I were not even speaking on the same side of the dayroom as his cell, we were on "A" side, inmate Bradford lives on "C" side cell 137. C/O Nkwocha had no legitimate reason to treat myself and Bradford the way he did other than to single me out personally because I'm white. Please refer to the statement from inmate Bradford P-09891 C-2-137. Because of C/O Nkwocha's unprofessional actions in this matter this should not be taken lightly and should go into his personnel file. I don't feel CCI took this matter seriously nor do I feel they ever intended on reprimanding C/O Nkwocha for his actions. Please exhaust.

(Id. at 9, 12.)

The appeal was denied at the third level of review on February 8, 2016, exhausting Plaintiff's remedies. (Id. at 7.) However, Appeal log no. CCI-0-15-02108 did not exhaust Plaintiff's remedies for the retaliation claim upon which this case now progresses, for the following reasons.

First, even if Plaintiff had exhausted his remedies without doubt for this appeal, the decisive issue is one of scope: Are Plaintiff's claims at issue against C/O Nkwocha in the First Amended Complaint addressed by Plaintiff in the appeal? The scope inquiry relates to the underlying purposes of the exhaustion doctrine. The Ninth Circuit has explained, "Requiring exhaustion provides prison officials a 'fair opportunity to correct their own errors' and creates

---

[10] Plaintiff refers to this inmate as Inmate Radford in the First Amended Complaint and Inmate Bradford in the Second Amended Complaint. The use of either name does not change the exhaustion analysis.

an administrative record for grievances that eventually become the subject of federal court complaints." <u>Reyes v. Smith</u>, 810 F.3d 654, 657 (9th Cir. 2016) (quoting <u>Woodford</u>, 548 U.S. at 657). Consequently, as a general rule, "[a] grievance . . . need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009); <u>accord</u> <u>Schoppe-Rico v. Horel</u>, 2012 WL 4477983, *3 (N.D. Cal. 2012). "[I]t is the prison's requirements," however, "and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones</u>, 549 U.S. at 218. Governing California regulations confine a grievance to the matters and personnel named in the first-level grievance. Cal. Code Regs. tit. 15, § 3084.1(b). Moreover, "[t]he inmate is limited to one issue or related set of issues per . . . [grievance] form submitted." <u>Id.</u> at § 3084.2(a)(1). The regulations direct the inmate filing a grievance to "describe the specific issue under appeal and the relief requested." <u>Id.</u> at § 3084.2(a). "The inmate . . . shall state all facts known and available to him/her regarding the issue being appealed . . . ." <u>Id.</u> at § 3084.2(a)(4). Furthermore, "[t]he inmate . . . shall list all staff member(s) involved and shall describe their involvement in the issue . . . . [T]he inmate . . . shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal." <u>Id.</u> at § 3084.2(a)(3). Matters and personnel not described in the first-level grievance form are outside the grievance's scope.

Plaintiff's appeal does not put the prison on adequate notice of the problem at issue. More specifically, it does not address defendant Nkwocha's threat to remove Plaintiff's MAC Rep. status because Plaintiff had filed an appeal against him. Plaintiff's appeal focused entirely on his complaint that defendant Nkwocha acted in a "rude, unprofessional, obnoxious, and worst of all racist" manner when he saw Plaintiff speaking with a Black inmate, and ordered Plaintiff to "lock it up" or he would "tear up" Plaintiff's cell. (ECF No. 16-3 at 9, 11.) There was nothing in the appeal that might have alerted the prison that Plaintiff was complaining that defendant Nkwocha threatened to remove Plaintiff's MAC Rep. status because Plaintiff had filed an appeal against him. Without saying something that would have alerted the prison to

the possibility that he was complaining about Nkwocha's retaliatory threat to remove Plaintiff as a MAC Rep., Plaintiff failed to exhaust his remedies with respect to his claim against Nkwocha. See Morton v. Hall, 599 F.3d 942, 945–46 (9th Cir.2010) (prisoner's administrative appeals were insufficient to apprise the prison that he was complaining about an assault by other inmates, when the appeals mentioned only the prison's decision to deny him the right to visit with minors).

Secondly, even if Plaintiff's appeal addressed the retaliation claim at issue, it was not timely because it was not completed before this lawsuit was filed. Plaintiff filed the appeal on October 17, 2015. He filed this lawsuit only sixteen days later, on November 2, 2015. Plaintiff claims that he filed the lawsuit early because he had not received a response to his appeal. But Plaintiff waited only sixteen days to receive a response.[11] Plaintiff appears to seek an exception to the rules because in the past at CCI, "appeals were shredded or just thrown away, never to be addressed." (Opp'n, ECF No. 19 at 1:16-18.) Plaintiff also asserts that he sent some appeals to Internal Affairs and the office of the Ombudsman because of problems with due process and retaliation at CCI and because involving an outside agency sometimes resulted in faster resolution. Here, Plaintiff has not shown that the appeals process was not available to him. The court declines to find an exception to the exhaustion requirement that excuses Plaintiff from even attempting to properly exhaust his administrative remedies based on his claims that prison officials' in the past had obstructed Plaintiff's access to the administrative remedy system. Moreover, taking Plaintiff's allegations as true that defendant Nkwocha refused to file Plaintiff's appeal at the first level of review, Nkwocha's refusal did not cause the appeal process to be unavailable to Plaintiff. Despite any delay at the first level, Defendant did not thwart Plaintiff's efforts, and Plaintiff was able to complete the process and exhaust his remedies.

///

---

[11] With some exceptions, the prison is allowed thirty days in which to respond to and return first and second level responses to the inmate. Cal. Code Regs. tit. 15, § 3084.8.

///

Third, even if the court found Plaintiff's appeal to be timely under <u>Rhodes v. Robinson</u> because the retaliation claim was newly-added in the First Amended Complaint,[12] Plaintiff failed to exhaust because the appeal does not address the newly-added claim.

Fourth, because Defendant allegedly retaliated against Plaintiff because he filed the appeal, the appeal must have been filed *before* the retaliation and therefore could not have exhausted Plaintiff's remedies for the retaliation claim. In other words, if the retaliation happened *after* the appeal was filed, the appeal could not have addressed the retaliation as the retaliation had not happened yet.

For these reasons, the court concludes that Plaintiff has not exhausted his administrative remedies. In appeal log no. CCI-15-0218, Plaintiff states that C/O Nkwocha scolded him for speaking with a Black inmate and ordered him to "lock it up." He complained that Nkwocha was rude and racist. However, there is nothing in the appeal that would alert the prison that Nkwocha had threatened to remove Plaintiff from MAC status because Plaintiff filed an appeal against him. Therefore, Plaintiff's appeal does not address the retaliation claim against defendant Nkwocha. Plaintiff has not exhausted his remedies for the claims in this case; and Defendant is entitled to summary judgment on this ground.

Based on the court's finding that Plaintiff did not exhaust the available administrative remedies prior to filing suit, the court does not reach Defendant's other arguments in the motion for summary judgment. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits . . . ." <u>See</u> <u>McKinney</u>, 311 F.3d at 1200 (quoting <u>Perez v. Wisconsin Dep't of Corr.</u>, 182 F.3d 532, 534 (7th Cir. 1999) (vacating judgment and remanding with instructions to dismiss for failure to exhaust in case where district court granted summary judgment to

---

[12] <u>See</u> <u>Rhodes v. Robinson</u>, 621 F.3d 1002, 1005 (9th Cir. 2010) (Defendants' argument that the PLRA requires the newly-added claims in the SAC to have been exhausted before the original complaint was "brought" on January 4, 2002, fails because it ignores the general rule of pleading that the SAC completely supercedes any earlier complaint, rendering the original complaint non-existent and, thus, its filing date irrelevant.)

///

defendants on the merits and did not rule on their pending motion for dismissal based on failure to exhaust)).

## V.    CONCLUSION AND RECOMMENDATIONS

The court finds that Defendant has met his burden of demonstrating that under the undisputed facts, Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a).  Defendant has shown an absence in the official records of any evidence that Plaintiff filed an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's retaliation claim in the First Amended Complaint against Defendant Nkwocha in this action.  Plaintiff has not submitted evidence of disputed material facts calling into question whether he satisfied the exhaustion requirement for his claim against Defendant.

Therefore, **IT IS HEREBY RECOMMENDED** that Defendant's motion for summary judgment, filed on September 22, 2016, be granted, and this action be dismissed in its entirety, without prejudice, based on Plaintiff's failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after the date of service of these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within **ten (10) days** after the date of service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**April 25, 2017**__          _____/s/ Gary S. Austin_____
                                                    UNITED STATES MAGISTRATE JUDGE